## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ZACKARY ELLIS SANDERS | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 20-cv-03672 (ABJ) |
| | * | |
| FEDERAL BUREAU OF | * | |
| INVESTIGATION | * | |
| | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM IN OPPOSITION TO
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Zackary Sanders ("Sanders") brought this action under the Freedom of Information Act ("FOIA") to secure the lawful disclosure of records held by Defendant Federal Bureau of Investigation ("FBI"). Presently before this Court for consideration is a Motion for Summary Judgment ("Motion") filed by the FBI. There is only one question that merits resolution at this time: is the FBI entitled to refuse to confirm or deny the existence of responsive records to Mr. Sanders's request?

For the reasons set forth in detail below, there is sufficient information to enable this Court to deny the Motion in its entirety and require the FBI to process and release all responsive records and then to produce a <u>Vaughn</u> index for any information that is argued to be exempt. Alternatively, material facts remain in dispute that justify permitting Mr. Sanders the opportunity to pursue limited discovery before the Court rules on the FBI's Motion.

### FACTUAL AND PROCEDURAL BACKGROUND

Mr. Sanders, through legal counsel, submitted a FOIA request to the FBI on November 12, 2020, seeking certain records pertaining to the FBI's relationship with a foreign law enforcement agency.

- All records relating to [■■■■■■■■■■■] from January 2019 to the present.

- Administrative staff manuals and instructions to staff regarding [■■■■■■■■■■■] January 2019 to the present.

- Records relating to Internet Protocol (IP) addresses provided by the [■■■■■■■■■■■] to the Federal Bureau of Investigation (FBI) as part of [■■■■■■■■■], from January 2019 to the present.

Defendant's Statement of Undisputed Material Facts, ECF Dkt. No. 18-2 (filed April 5, 2021)("SUMF") at ¶1.[1] On December 14, 2020, Mr. Sanders filed the instant matter and requested the Court to compel the FBI to search for and produce all non-exempt records in response to his FOIA request as well as a Vaughn index for any responsive documents withheld pursuant to a FOIA exemption. Id. at ¶4. By letter dated February 17, 2021, the FBI issued a Glomar response, refusing to either "confirm []or deny the existence of records responsive to [his] request pursuant to FOIA Exemption" 7(E). Id. at ¶5. It is this position that serves as the basis for the FBI's Motion for Summary Judgment.

## ARGUMENT

## I.  STANDARD OF REVIEW

Summary judgment pursuant to FRCP 56 should be awarded to a movant if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.

---

[1] On January 20, 2021, the U.S. District Court for the Eastern District of Virginia ("EDVA"), where Mr. Sanders is currently being prosecuted, issued an Order directing his counsel to seek permission from this Court to file and place under seal the original complaint in order to redact certain information that was alleged to have been subject to a protective order. ECF Dkt. No. 8. On January 22, 2021, Mr. Sanders complied and filed a redacted complaint. ECF Dkt. No. 9. The undersigned, now serving as primary counsel in this litigation, entered his Notice of Appearance on March 2, 2021. Although not all of the undersigned are acting as a counsel of record in the contemporaneous criminal matter, the undersigned are similarly bound by the applicable protective order and the ruling issued by the Court in EDVA. Therefore, nothing within this filing is intended to reveal information ordered redacted by the Court in EDVA and discussions will avoid doing so.

R. Civ. P. 56(c). In evaluating the appropriateness of summary judgment, the Court must view the evidence in the light most favorable to the non-moving party, Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006), accepting the non-moving party's evidence as true and drawing "all justifiable inferences" in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, the Court need not rely on any "conclusory allegations unsupported by factual data," Pub. Citizen Health Research Group v. FDA, 185 F.3d 898, 908 (D.C. Cir. 1999)(internal quotation marks and citations omitted), and should only find that "there is a genuine issue for trial" where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249 (citation omitted).

The mere existence of some alleged factual dispute between the parties will not defeat summary judgment; the requirement is that there is no genuine issue of material fact. See Holcomb, 433 F.3d at 895 (internal quotation marks and citations omitted). A fact is "material" if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are "irrelevant or unnecessary" do not affect the summary judgment determination. Anderson, 477 U.S. at 248. An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

## II.  THE FBI IS NOT ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO ITS GLOMAR RESPONSE

In some instances, a federal agency may refuse to confirm or deny the existence of responsive records. Wolf v. CIA, 473 F.3d 370, 374 (D.C. Cir. 2007). This is commonly called a "Glomar" response.[2] Such a response is appropriate when revealing the very fact that an agency

---

[2] The term was created as a result of a FOIA request for records relating to a purported ocean going mining vessel called the *Glomar Explorer* that was involved in a covert intelligence operation. See Phillippi v. CIA, 546 F.2d 1009 (D.C. Cir. 1976).

possesses responsive records would itself "cause harm cognizable under [a] FOIA exception." Id., quoting Gardels v. CIA, 689 F.2d 1100, 1103 (D.C. Cir. 1982); see also Roth v. Dep't of Justice, 642 F.3d 1161, 1178 (D.C. Cir. 2011)(same). To justify a Glomar response, the agency must supply the court with a detailed affidavit that explains why it cannot provide a substantive response pursuant to a FOIA exemption. Elec. Privacy Info. Ctr. v. NSA, 678 F.3d 926, 931 (D.C. Cir. 2012).[3] To determine whether a Glomar response "fits a FOIA exemption, courts apply the general exemption review standards established in non-Glomar cases." Wolf, 473 F.3d at 374.

In this case, the FBI solely relies upon FOIA Exemption 7(E) as a basis for asserting its Glomar response.[4] "'[T]o withhold documents under Exemption 7, [an] agency must, as a preliminary matter' make a 'threshold' showing demonstrating 'that the records were compiled for a law enforcement purpose.'" Pinson v. Dep't of Justice, 245 F. Supp. 3d 225, 249 (D.D.C. 2017), quoting Kay v. FCC, 976 F. Supp. 23, 37 (D.D.C. 1997). After an agency has made its threshold showing, it must then establish that a specific subsection of Exemption 7 applies. Id. Mr. Sanders does not challenge that any records that would be responsive to his FOIA request meet the threshold test of being "compiled for a law enforcement purpose" thereby potentially subject to withholding under Exemption 7. But the issue of whether Exemption 7(E)

---

[3] The FBI has filed a publicly available declaration but also a version *in camera* and *ex parte* that Mr. Sanders's counsel has not been permitted to review. ECF Dkt. No. 20. Thus, Mr. Sanders's argument is, necessarily, limited in what he can address.

[4] FOIA Exemption 7(E) permits the withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

appropriately applies is not one that is yet before this Court. Instead, the only question that is ripe for adjudication is whether FBI is categorically entitled to Glomar everything as a matter of fact or law.

When an agency has officially acknowledged otherwise exempt information through prior disclosure, the disclosure of the information may be compelled notwithstanding the agency's otherwise valid exemption claim. See Fitzgibbon v. CIA, 911 F.2d 755, 765 (D.C. Cir. 1990). In the context of a Glomar response, the evidentiary burden that falls upon a plaintiff to establish official acknowledgment is merely to demonstrate that agency has already disclosed the fact of the existence or non-existence of responsive records. See Wolf, 473 F.3d at 379-380. It is not required, at least in terms of countering a Glomar response, for a plaintiff to demonstrate that the contents of particular records have actually been officially disclosed. See Marino v. DEA, 685 F.3d 1076, 1082 (D.C. Cir. 2012).

In its Memorandum of Law, FBI outlined why it believes a Glomar response relying upon FOIA Exemption 7(E) was appropriate. See Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment at 7, ECF Dkt. No. 18-1 (filed April 5, 2021) ("Def's Memo"). It should be made clear that there is no dispute that the FBI acknowledges that what is at issue in this FOIA case involves information pertaining to foreign law enforcement agencies and the FBI's relationship to such entities. Id. at 1. The FBI claims that:

- "[c]onfirming or denying the existence or non-existence of responsive records to Plaintiff's request, including administrative staff manuals and instructions, would reveal non-public FBI techniques by revealing coordination (or lack thereof) between a specific [foreign law enforcement agency] and the FBI in a particular matter." Id.

- "[t]o the extent the FBI was coordinating with a specific foreign law enforcement agency, revelation of that information could potentially "disclose the types of information the FBI is able to obtain from the specific [foreign law enforcement agency] and the types of cases it chooses to coordinate with the [agency]." Id.

- this information "could provide criminals/criminal organizations under investigation, details concerning the scope of collection and information gathering capabilities and strengths of the FBI, as well as identify vulnerabilities or weaknesses of the FBI and/or [foreign law enforcement agency] to exploit in these investigative areas/efforts." <u>Id</u>. And, finally,

- "[i]f the FBI were to either confirm or deny the existence or non-existence of responsive records it would damage relationships with [foreign law enforcement agencies], potentially harm the free flow of pertinent investigative information and hinder the FBI's ability to investigate crimes and/or international crimes under scrutiny in ongoing investigation efforts." <u>Id</u>.[5]

These assertions are not only overbroad and unsupportable, particularly in the context for which Mr. Sanders seeks certain records, but importantly also contradict official statements of the Department of Justice, the FBI's parent agency, that specifically reveal past and ongoing law enforcement relationships with foreign countries. While it may be at a later date certain information within some of the responsive records, or in some instances an entire record itself, might be legitimately exempt from release, the FBI's Glomar invocation to refuse to confirm or deny its possession or non-possession of responsive records should respectfully be rejected.

A.  **There Is More Than Sufficient Evidence Of Public, Official Disclosures Of Information To Conclude That A Glomar Response Is Not Permissible As A Matter Of Law**

The FBI acknowledges, as it must, that "[u]nder FOIA's 'public domain' exemption, an agency may not rely on an otherwise valid [FOIA] exemption to justify withholding information

---

[5] The FBI also argued that "were to state that it had no records related to a specific foreign law enforcement agency, the assertion could also provide "criminals/criminal organizations under investigation[] details concerning the scope of collection and information gathering capabilities and strengths of the FBI, as well as identify vulnerabilities or weaknesses of the FBI and/or [foreign law enforcement agency] to exploit in these investigative areas/efforts." Def's Memo at 7-8. This position is logically irrelevant as there cannot be any reasonable argument that no responsive records exist when not only Mr. Sanders is in lawful possession of some of them, but so are numerous defendants in court cases throughout the United States, many of which contain publicly available references filed by the FBI or the court itself. This issue will be raised further below.

that is already in the public domain." Def's Memo at 8, quoting Marino v. DEA, 685 F.3d 1076,

1080 (D.C. Cir. 2012)(internal quotation marks and citation omitted)(alteration in original).[6]

Indeed, the D.C. Circuit clarified in rulings such as ACLU v. CIA, 710 F.3d 422 (D.C. Cir. 2013)

and Marino that the more exacting standard set forth in Wolf for demonstrating an "official

acknowledgment" of specific information within documents need not be met when countering a

Glomar response. The Circuit explained in ACLU and Marino that it is not necessary for a

plaintiff to demonstrate that the specific content of the records have been officially disclosed, but

rather only that the existence or non-existence of the records has been officially acknowledged.

See also Smith v. CIA, 2017 U.S. Dist. LEXIS 47230, *10 (D.D.C. Mar. 30, 2017)("The match

between Plaintiff's request and President Obama's statement, although the statement did not

consist of the specific words 'CIA' of 'budget line items', is as close as the match in ACLU v.

CIA.").

  As the D.C. Circuit reiterated earlier this year in Leopold v. CIA, 987 F.3d 163, 170 (D.C.

Cir. 2021):

> To find official acknowledgment, under our precedents, three prerequisites must
> be met: "the information requested must be as specific as the information
> previously released," "match the information previously disclosed," and "already
> have been made public through an official and documented disclosure."
> Fitzgibbon, 911 F.2d at 765 (quoting Afshar, 702 F.2d at 1133). "In the Glomar
> context, then, if the prior disclosure establishes the *existence* (or not) of records
> responsive to the [information] request, the prior disclosure necessarily matches
> both the information at issue . . . and the specific request for that information."
> Wolf, 473 F.3d at 379. This test is "strict." Moore v. CIA, 666 F.3d 1330, 1333,
> 399 U.S. App. D.C. 63 (D.C. Cir. 2011) (citing Wilson v. CIA, 586 F.3d 171, 186
> (2d Cir. 2009)).

---

[6] FBI claims that "Plaintiff does not plausibly allege that the existence (or not) of records
responsive to his FOIA request has already been publicly disclosed by the FBI….Nor has
Plaintiff referenced specific information in the public domain that duplicates what he claims is
being withheld." Def's Memo at 8-9. Whether or not this is even true during prior administrative
or litigative proceedings, it is irrelevant as Mr. Sanders is most certainly doing so now in
response to FBI's Motion for Summary Judgment.

In support of its Glomar invocation FBI claims "it has never publicly and officially acknowledged coordination with or the receipt of information from the specific [foreign law enforcement agency] at issue in the context of the investigative matter described in Plaintiff's request." Def's Memo at 8-9. This fiction of deniability with respect to the existence or non-existence of records responsive to Mr. Sanders's requests simply stretches the feasibility of a Glomar response beyond acceptable limits. As the D.C. Circuit articulated:

> The Glomar doctrine is in large measure a judicial construct, an interpretation of FOIA exemptions that flows from their purpose rather than their express language. *In this case, the CIA asked the courts to stretch that doctrine too far -- to give their imprimatur to a fiction of deniability that no reasonable person would regard as plausible.* "There comes a point where . . . Court[s] should not be ignorant as judges of what [they] know as men" and women. <u>Watts v. Indiana</u>, 338 U.S. 49, 52, 69 S. Ct. 1347, 93 L. Ed. 1801 (1949)(opinion of Frankfurter, J.).

<u>ACLU</u>, 710 F.3d at 431 (emphasis added).

1. *The Department of Justice – Parent Agency to FBI – Routinely Publicly Reveals Detailed Information Undermining The Invocation of FBI's Glomar Response*

The FBI declarant argues that "coordination  between Foreign Law Enforcement Agencies ("FLAs") and the FBI [sic] a law enforcement technique. Although it is publicly known the FBI coordinates generally with numerous FLAs, the specific matters the FBI coordinates with each specific FLA on is not publicly known. Therefore, the type of alleged coordination described in Plaintiffs request, specific to a particular FLA and alleged investigative matter, constitutes a non-public law enforcement technique. Declaration of Joseph E. Bender, Jr., at 5 fn.3, ECF Dkt. No. 19. But that is simply untrue.

The Department of Justice routinely publicly acknowledges it engages in law enforcement operations and investigation with its foreign counterparts, especially with respect to matters of

cybercrime in specific criminal cases.[7] It is farcical to argue that such relationships are not

ongoing, routine and officially acknowledged. See e.g., *https://www.justice.gov/opa/pr/three-*

*germans-who-allegedly-operated-dark-web-marketplace-over-1-million-users-face-us* (2019

press release acknowledging cooperation with specific law enforcement agencies in Germany

and Netherlands, Brazil and elsewhere)(last accessed April 19, 2021); *https://www.justice.gov/*

*opa/pr/281-arrested-worldwide-coordinated-international-enforcement-operation-targeting-*

*hundreds* (2019 press release acknowledging cooperation with specific law enforcement agencies

in Ghana, Turkey, France, United Kingdom, Japan and elsewhere)(last accessed April 19, 2021);

*https://www.justice.gov/opa/pr/south-korean-national-and-hundreds-others-charged-worldwide-*

*takedown-largest-darknet-child* (2019 press release acknowledging cooperation with specific law

enforcement agencies in the Republic of Korea, United Kingdom and Germany)(last accessed

April 19, 2021); *https://www.justice.gov/opa/pr/two-iranian-men-indicted-deploying-ransom*

*ware-extort-hospitals-municipalities-and-public* (2018 press release acknowledging cooperation

with specific law enforcement agencies in the United Kingdom and Canada)(last accessed

April 19, 2021).[8] See also *https://www.justice.gov/opa/pr/us-and-uk-sign-landmark-cross-*

*border-data-access-agreement-combat-criminals-and-terrorists* (2019 press release announcing

---

[7] Courts have held that prior disclosures must originate from the agency itself, as opposed to "another, unrelated agency." ACLU, 710 F.3d at 429 n.7. "Disclosure by one federal agency does not waive another agency's right to assert a FOIA exemption." Mobley v. CIA, 806 F.3d 568, 583 (D.C. Cir. 2015). However, prior disclosures "made by an authorized representative of the agency's parent" can trigger a waiver. ACLU, 710 F.3d at 429 n.7.

[8] By identifying this generic sample of Department of Justice law enforcement press releases that discuss relationships with specific foreign countries and their law enforcement entities, Mr. Sanders in no way is publicly suggesting that any one of these countries is involved with his criminal proceeding. But the existence of these press releases and identification of relationships with foreign law enforcement agencies completely undermines FBI's Glomar invocation on the broad basis for which it asserted it.

new law enforcement relationship specifically with United Kingdom relating to electronic data regarding serious crime, including terrorism, child sexual abuse, and cybercrime).

These press releases, which serve as just some examples, justify denying FBI's blanket invocation of Glomar with respect to Mr. Sanders's FOIA requests. But that is not the only evidence that exists that justifies rejecting FBI's overbroad invocation.

   2.  *The Department of Justice – Parent Agency to FBI - Has Officially Acknowledged the Existence of its Relationship with a Foreign Law Enforcement Agency in a Separate Criminal Proceeding*

The focus of the particular records sought in his FOIA request, i.e., the existence of the FBI's relationship with a foreign law enforcement agency ("FLA"), was officially and *publicly* acknowledged in United States of America v. Zackary Ellis Sanders, Criminal Action No. 20-143 (E.D.VA)(TSE), ECF Dkt. No. 122. In a redacted but publicly available opinion, U.S. District Court Judge T.S. Ellis, III ruled upon Motions to Suppress filed by Mr. Sanders's counsel in his separate criminal proceeding. See Exhibit "1" (redacted opinion dated October 26, 2020, and publicly issued October 29, 2020). In that opinion, the existence of the FBI's relationship with a FLA is clearly and explicitly acknowledged by way of citations to a sworn affidavit from the FBI, including the fact the relationship involved the receipt of information about a particular IP address allegedly accessing online material that is the subject of the criminal action. Id. at *1-*4. As an example, the FBI case agent specifically submitted an affidavit to the Court that stated:

> The FLA is a national law enforcement agency of a country with an established rule of law. There is a long history of U.S. law enforcement sharing criminal investigative information with the FLA and the FLA sharing criminal investigative information with U.S. law enforcement, across disciplines and including the investigation of crimes against children. The FLA advised U.S. law enforcement that it obtained that information through independent investigation that was lawfully authorized in the FLA's country pursuant to its national laws. The FLA further advised U.S. law enforcement that the FLA had not interfered

with, accessed, searched or seized any data from any computer in the United
States in order to obtain that IP address information. U.S. law enforcement
personnel did not participate in the investigative work through which the FLA
identified the IP address information provided by the FLA.

Id. at *4.

That public and *official* acknowledgment by FBI/Department of Justice should respectfully
be held to undermine the viability of the Glomar invocation in this present action. The existence
of records concerning a relationship between the FBI and a FLA is a matter of public record,
placed there by none other than FBI/Department of Justice itself.

It bears noting, of course, that denying FBI's Motion does not necessarily mandate that
documents will ultimately be produced, to say anything about the identity of the FLA ever being
identified publicly. In fact, that information could very well have a legitimate basis for FBI to
substantively argue that a FOIA exemption applies, but that is not the issue that is before the
Court at this time. With the failure of FBI's broad Glomar response, the case must now proceed
to the filing of a Vaughn index or other description of the kind of documents the FBI possesses,
followed by litigation regarding whether the exemptions apply to those documents. See
generally Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973). It is certainly plausible (although Mr.
Sanders is not conceding anything) that this Court would ultimately conclude in later briefing
that certain actual responsive records, or some of the information therein, are exempt from
production, perhaps under Exemption 7(E).

   3. *Alternatively, Mr. Sanders is Entitled to Limited, Judicially Controlled Discovery, on
      the Issue of Whether FBI has Publicly Disclosed Information to Contradict its Broad
      Glomar Invocation*

      i. *Discovery Is Permissible In FOIA Litigation*

Although not common, discovery has been authorized in FOIA litigation. See e.g.
Renegotiation Bd. v. Grumman Aircraft Engineering Corp., 421 U.S. 168, 181 (1975)(plaintiff

permitted to depose agency official regarding whether documents at issue were final agency opinions); Tax Analysts v. IRS, 214 F.3d 179, 185 (D.C. Cir. 2000)(discovery necessary to develop factual record). "[W]hile FOIA cases generally turn on application of law to undisputed material facts set out in agency affidavits, courts may occasionally confront contested questions of fact that must be answered first." Scudder v. CIA, 25 F. Supp. 3d 19, 31 (D.D.C. 2014) (internal citation omitted). A court has a wide variety of options to resolve factual disputes, "from expansion of the record by means of affidavits and other written submission or through discovery [and] fullblown hearings with live testimony by the movant and other witnesses." Id. at 51, quoting Pham v. United States, 317 F.3d 178, 185 (2d Cir. 2003)(Sotomayor, J., concurring).

Courts have not outlined an exhaustive list of circumstances in which discovery is permissible in a FOIA case. While the most common justification is evidence of bad faith by an agency, see Landmark Legal Found. v. EPA, 959 F. Supp. 2d 175, 184 (D.D.C. 2013), courts have noted that evidence of bad faith is merely "an exception" to the rule, not the *only* exception. See Voinche v. FBI, 412 F. Supp. 2d 60, 72 (D.D.C. 2006). Generally speaking, Federal Rules of Civil Procedure ("FRCP") 26(b) authorizes discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. See Fed. R. Civ. P. 26(b)(1). Trial courts exercise considerable discretion in handling discovery matters, and a district court's decision to permit or deny discovery is reviewable only for an abuse of discretion. Food Lion v. United Food & Commer. Workers Int'l Union, 103 F.3d 1007, 1012 (D.C. Cir. 1997). That discovery can, however, be limited if any of the following apply:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C). In deciding either to compel or quash discovery, the court must balance potentially conflicting goals, avoiding depriving a party of discovery that is reasonably necessary while bearing mind that discovery has boundaries which come into existence when the inquiry encroaches upon recognized domains of privilege. See Osage Tribe of Indians v. United States, 84 Fed. Cl. 495, 497 (Fed. Cl. 2008).

Furthermore, and more specifically, FOIA imposes no limits on courts' equitable powers in enforcing its terms. Renegotiation Bd., 415 U.S. at 19-20. The D.C. Circuit, as well as district courts within this Circuit, have relied upon FOIA as a basis to exercise their equitable authority. See e.g. Payne Enterprises v. United States, 837 F.2d 486, 494 (D.C. Cir. 1988)(mandating relief for plaintiff whose FOIA requests were repeatedly obstructed by informal, unlawful policy to deny requests); Nat'l Sec. Counselors v. CIA, 960 F. Supp. 2d 101, 148 (D.D.C. 2013)(striking down categorical policy to deny assignments of FOIA requests); Scudder, 25 F. Supp. 3d at 49 (authorizing limited discovery to inquire into CIA's ability to produce electronic copies of responsive records).

If the Court is still not satisfied that FBI has too broadly invoked Glomar, limited discovery should be permitted that is overseen by the Court with respect to FBI's (and Department of Justice as its parent entity) public acknowledgment of its relationship and ongoing cooperative activities with foreign law enforcement agencies in specific criminal cases. There are countless FBI affidavits/declarations that have been filed with federal courts across the country reflecting,

just as acknowledged in Exhibit "1", a relationship with a foreign law enforcement entity concerning a specific criminal matter that would undoubtedly further undermine FBI's broad Glomar invocation. These are documents that are not available to Mr. Sanders as it would be virtually impossible to identify other than literally going through every single criminal case in every federal district court. But FBI would easily be able to identify the numerous cases this would apply to, particularly because it is often the same FBI agents (and/or legal attaches) who participate in the investigations and submit the affidavits. Additionally, the press releases themselves point to an avenue of cases that would be relevant. Rule 56(f) Declaration of Mark S. Zaid, Esq. at *passim* (dated April 19, 2021).

To be clear, the discovery, which could come in the form of interrogatories, document production requests and/or F.R.C.P. Rule 30(b)(6) deposition, would not be seeking to reveal the type of underlying information that is subject to Mr. Sanders's FOIA request. Instead, the premise would be to specifically challenge the FBI's broad Glomar invocation and its argument that it has not already publicly revealed the type of information being sought here. Id. at 11.

Therefore, alternatively, discovery is warranted prior to a ruling on the FBI's Motion for Summary Judgment.

## **CONCLUSION**

For the foregoing reasons, FBI's Motion for Summary Judgment should be denied and further proceedings should continue. Alternatively, limited discovery on the issue of FBI's Glomar invocation should be permitted prior to any ruling on its Motion.

Date:   April 19, 2021

Respectfully submitted,

/s/ *Mark S. Zaid*

_____

Mark S. Zaid, Esq.
D.C. Bar #440532
Bradley P. Moss, Esq.
D.C. Bar #975905
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 700
Washington, D.C. 20036
(202) 454-2809
(202) 330-5610 fax
Brad@MarkZaid.com
Mark@MarkZaid.com

Jade Chong-Smith
D.C. Bar #1047364
KaiserDillon PLLC
1099 14th Street, N.W.
8th Floor West
Washington, D.C. 20005
(202) 640-2850
jchong-smith@kaiserdillon.com

Attorneys for the Plaintiffs