UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ZACKARY ELLIS SANDERS,  )  <br>  ) <br> Plaintiff,  ) <br>  ) <br> v.  ) <br>  ) <br> FEDERAL BUREAU  ) <br> OF INVESTIGATION,  ) <br>  ) <br> Defendant.  ) <br>  ) | Civil Action No. 20-3672 (ABJ) |

## **MEMORANDUM OPINION**

Plaintiff Zackary Ellis Sanders brought this action on December 14, 2020 under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, seeking to compel defendant, the Federal Bureau of Investigation ("FBI") to release certain records. *See* Compl. [Dkt. # 1] (SEALED) ¶ 1. Pending before the Court is defendant's motion for summary judgment. Def.'s Mot. for Summ. J. [Dkt. # 18] ("Mot."); *see also* Def.'s Mem. in Supp. of Mot. [Dkt. # 18-1] ("Def.'s Mem."); Def.'s Statement of Undisputed Material Facts [Dkt. # 18-2] ("Def.'s SOF"). The motion is supported by a declaration explaining the justification for the agency's invocation of FOIA Exemption 7. *See* Decl. of Joseph E. Bender, Jr. [Dkt. # 18-3] ("Bender Decl."). Plaintiff opposes the motion for summary judgment. Pl.'s Mem. in Opp. to Mot. [Dkt. # 21] ("Opp."); *see also* Pl.'s Resp. to Def.'s SOF, Ex. 3 to Opp. [Dkt. # 21-3] ("Pl.'s Resp. SOF").

Because the Court concludes, based on its consideration of the entire record, that the agency's invocation of FOIA Exemption 7 was proper and that the particular information sought has not been officially acknowledged, defendant's motion for summary judgment will be **GRANTED**.

## BACKGROUND

Plaintiff submitted a FOIA request to the FBI on November 12, 2020, seeking to examine records that "pertain to the FBI's relationship with a foreign law enforcement agency." Def.'s SOF ¶ 1; Pl.'s Resp. SOF ¶ 1; *see* Ex. A to Compl. [Dkt. # 1-1] (SEALED) ("FOIA Request"). Plaintiff's request sought records pertaining to "a foreign law enforcement agency [p]laintiff contends the FBI works with 'to investigate cybercrime,'" "staff manuals and instructions regarding the foreign law enforcement agency," "Internal Protocol addresses provided by the foreign law enforcement agency to the FBI," and "correspondence between the FBI and the foreign law enforcement agency." Def.'s SOF ¶ 2; Pl.'s Resp. SOF ¶ 2. Plaintiff requested "all correspondence related to the . . . requests, including tips and information exchanged between the [foreign law enforcement agency] and the FBI." FOIA Request at 3. The FBI acknowledged plaintiff's FOIA request on November 12, 2020. Ex. B to Compl. [Dkt. # 1-2].

On December 14, 2020, plaintiff brought this action against the FBI under FOIA, alleging that the FBI had failed to respond to plaintiff's request in a timely matter or to provide him with any of the requested records. Compl. ¶¶ 12–15. Plaintiff requested that the Court order the FBI to "conduct a search for any and all responsive records" pertaining to his FOIA request, and to

2

"[o]rder the FBI to produce, on an expedited basis, any and all non-exempt responsive records and a *Vaughn* Index of any responsive records withheld under a claim of exemption." Compl. at 4.[1]

On February 17, 2021, the FBI issued what is commonly called a *Glomar* response,[2] informing plaintiff "it could neither confirm nor deny the existence of records responsive to [p]laintiff's request pursuant to FOIA Exemption 7(E), 5 U.S.C. § 552(b)(7)(E)." Bender Decl. ¶ 9; *see* Def.'s SOF ¶ 5; Pl.'s Resp. SOF ¶ 5. Thereafter on April 5, 2021, the government moved for summary judgment on the basis that a *Glomar* response was justified because even acknowledging the existence of records would give rise to a harm protected by FOIA Exemption 7(E): it would require the FBI to disclose whether it was or was not coordinating with a specific foreign law enforcement agency in general or on a particular investigative matter. *See* Mot.; Def.'s Mem. at 7, citing Bender Decl. ¶ 18. Such an acknowledgement could provide "criminals/criminal organizations under investigation, details concerning the scope of collection and information gathering capabilities and strengths of the FBI, as well as identify vulnerabilities

---

1   Production of a "*Vaughn* index" is one way that an agency can explain its response to a FOIA request. In order for a court to pass on the agency's action, the agency must submit a "Vaughn index and/or accompanying affidavits or declarations" specifically showing why documents were redacted or withheld in full. *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 88 (D.D.C. 2009). The Vaughn Index must "provide[] a relatively detailed justification, specifically identif[y] the reasons why a particular exemption is relevant and correlat[e] those claims with the particular part of a withheld document to which they apply." *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 146 (D.C. Cir. 2006), quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977).

2   The term "*Glomar* response" originates from the Central Intelligence Agency's ("CIA") refusal to confirm or deny the existence of records in response to a FOIA request relating to "the *Hughes Glomar Explorer*, a ship used in a classified [CIA] project 'to raise a sunken Soviet submarine from the floor of the Pacific Ocean to recover the missiles, codes, and communications equipment onboard for analysis by United States military and intelligence experts.'" *Roth v. U.S. Dep't of Just.*, 642 F.3d 1161, 1171 (D.C. Cir. 2011), quoting *Phillippi v. CIA*, 655 F.2d 1325, 1327 (D.C. Cir. 1981).

or weaknesses of the FBI and/or [foreign law enforcement agency] to exploit in these investigative areas/efforts."  Def.'s SOF ¶ 12, citing Bender Decl. ¶ 18.  Moreover, the agency asserts it has "never publicly and officially acknowledged coordination with or the receipt of information from the specific [foreign law enforcement agency] at issue in the context of the investigative matter described in [p]laintiff's request."  Def.'s SOF ¶ 15, citing Bender Decl. ¶ 12.

Plaintiff opposed defendant's motion.  Opp.  Plaintiff maintains that the FBI may not rely on FOIA Exemption 7(E) because of the "public domain" exception; plaintiff argues that the government has already publicly and officially acknowledged the information it is trying to shield and therefore, it can no longer be withheld in response to a FOIA request.  Opp. at 6–11; *see also* Rule 56(f) Decl. of Mark S. Zaid, Esq., Ex. 2 to Opp. [Dkt. # 21-2] ¶ 9.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial."  *Id*. at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment.  *See Anderson*, 477 U.S. at 247–48.  A dispute is "genuine" only if a reasonable fact-finder could find

for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation.  *Id*. at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).

FOIA cases are typically and appropriately decided on motions for summary judgment. *Brayton v. Office of the U.S. Trade Rep.,* 641 F.3d 521, 527 (D.C. Cir. 2011).  In FOIA cases, the agency bears the ultimate burden of proof.  See *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989).  The Court may award summary judgment based solely on information provided in an agency's affidavits or declarations that identify "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  These affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'"  *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981).

## ANALYSIS

FOIA requires government agencies to release records upon request in order to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *NLRB v. Robbins Tire & Rubber Co*., 437 U.S. 214, 242 (1978).  The statute provides that: "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person," 5 U.S.C. § 552(a)(3)(A), unless the records fall within one of nine narrowly construed exemptions.

*See* 5 U.S.C. § 552(b); *FBI v. Abramson*, 456 U.S. 615, 630 (1982).  This framework "represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential."  *Ctr. for Nat'l Sec. Stud. v. U.S. Dep't of Just.*, 331 F.3d 918, 925 (D.C. Cir. 2003).  When an agency withholds documents or parts of documents, it must explain what it is withholding and the statutory exemptions that apply.  *See Vaughn v. Rosen*, 484 F.2d 820, 825–28 (D.C. Cir. 1973).

In some instances, however, the government may refuse to even confirm or deny the existence of responsive records.  *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007).  This is called a "*Glomar* response."  *Id.*  Such a response is appropriate when revealing the very fact that an agency possesses responsive records would itself "cause harm cognizable under [a] FOIA exception."  *Id.*, quoting *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982).

To justify a *Glomar* response, the agency must supply the court with a detailed affidavit that explains why it cannot provide a substantive response pursuant to a FOIA exemption.  *Elec. Privacy Info. Ctr. v. Nat'l Sec. Agency*, 678 F.3d 926, 931 (D.C. Cir. 2012).  To determine whether a *Glomar* response "fits a FOIA exemption, courts apply the general exemption review standards established in non-*Glomar* cases."  *Wolf*, 473 F.3d at 374.

I. **Exemption 7:  Records compiled for law enforcement purposes**

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent they fall within six specific categories. 5 U.S.C. § 552(b)(7).  The FBI invoked Exemption 7(E) as a basis for asserting its *Glomar* response, Def.'s SOF ¶ 5; Pl.'s Resp. SOF ¶ 5, and that shields those records that "would disclose techniques and procedures for law enforcement investigations or prosecutions . . . if such

disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

"[T]here are two critical conditions that must be met for a law enforcement agency to pass the Exemption 7 threshold. First, the agency's investigatory activities that give rise to the documents sought must be related to the enforcement of federal laws or to the maintenance of national security. . . . Second, the nexus between the investigation and one of the agency's law enforcement duties must be based on information sufficient to support at least 'a colorable claim' of its rationality." *Pratt v. Webster*, 673 F.2d 408, 420–21 (D.C. Cir. 1982).

"To determine 'whether records are compiled for law enforcement purposes, [the D.C.] circuit has long emphasized that the focus is on how and under what circumstances the requested files were compiled and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding.' Although an agency bears the burden to show that the records meet the exemption-seven threshold, the FBI's 'decision to invoke exemption 7 is entitled to deference' because the agency 'specializes in law enforcement.'" *Clemente v. FBI*, 867 F.3d 111, 119 (D.C. Cir. 2017) (internal citations omitted).

The FBI is a law enforcement agency – indeed, the primary investigative agency of the federal government. It has the authority to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations, and to further the foreign intelligence objectives of the United States. Def.'s Mem. at 4, citing Def.'s SOF ¶ 7; Bender Decl. ¶ 14. The agency argues that any records pertaining to the FBI's alleged interactions with a foreign law enforcement agency in the context of a particular investigative matter would be part of a criminal or national security investigation, conducted pursuant to the FBI's law enforcement duties. Def.'s Mem. at 5. Further, it maintains that "records compiled for a law enforcement purpose may

7

include 'internal agency materials *relating to* guidelines, techniques, sources, and procedures for law enforcement investigations and prosecutions, even when the materials have not been compiled in the course of a specific investigation." Def.'s Mem. at 4 (emphasis in original), citing *Tax Analysts v. I.R.S.*, 294 F.3d 71, 79 (D.C. Cir. 2002). Because plaintiff has asked for records relating to the FBI's potential coordination with a foreign law enforcement agency, the FBI's investigation of a particular matter, and internal staff manuals and instructions, the agency submits that the requested documents were compiled for law enforcement purposes. Def.'s Mem. at 4–5. And plaintiff does not disagree that plaintiff's request seeks law enforcement records in full. *See* Opp. at 5 ("It should be made clear that there is no dispute that the FBI acknowledges that what is at issue in this FOIA case involves information pertaining to foreign law enforcement agencies and the FBI's relationship to such entities.").

The Court finds that the FBI has made the threshold showing that the documents responsive to plaintiff's requests were compiled for law enforcement purposes.

## II.   Exemption 7(E):  Records that would disclose investigative techniques

FOIA Exemption 7(E) protects law enforcement records from disclosure "to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). The D.C. Circuit has explained: "Exemption 7(E) sets a relatively low bar for the agency to justify withholding: 'Rather than requiring a highly specific burden of showing how the law will be circumvented, [E]xemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'" *Blackwell v.*

*FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (second alteration in original), quoting *Mayer Brown LLP v. I.R.S.*, 562 F.3d 1190, 1194 (D.C. Cir. 2009).

In support of its motion for summary judgment, the FBI submitted a public declaration that described "why revealing whether or not the FBI has records concerning a relationship with a foreign law enforcement agency could lead to circumvention of the law." Def.'s Mem. at 7; *see* Bender Decl. The FBI's declarant avers:

> Confirming or denying the existence or non-existence of responsive records to [p]laintiff's request, including administrative staff manuals and instructions, would reveal non-public FBI techniques by revealing coordination (or lack thereof) between a specific [foreign law enforcement agency or "FLA"] and the FBI in a particular matter. It would also disclose the types of information the FBI is able to obtain from the specific FLA and the types of cases it chooses to coordinate with the FLA. Intelligence and investigative information disseminated to the FBI from an FLA can be utilized to set leads in furtherance of the FBI's investigative efforts. Merely acknowledging the types of information shared between the FBI and any specific FLA partner would reveal the FBI's capabilities and vulnerabilities when it comes to coordination and information sharing with certain FLAs; thus providing criminals/criminal organizations under investigation, details concerning the scope of collection and information gathering capabilities and strengths of the FBI, as well as identify vulnerabilities or weaknesses of the FBI and/or FLA to exploit in these investigative areas/efforts.

Bender Decl. ¶ 18. The declarant also avers that any intelligence or investigative information shared between the FBI and any foreign law enforcement agencies "is often done so with the understanding that the FBI's relationships and/or the information shared . . . will remain confidential," and even if the foreign law enforcement agency authorizes the FBI to acknowledge their relationship, "that authorization does not typically extend to authorize acknowledgment in specific matters or revealing the very information provided" by that agency. Bender Decl. ¶ 19.

In his opposition, plaintiff did not address whether the disclosure of law enforcement techniques and procedures could reasonably be expected to create a risk that people would try to

evade the law. *See generally* Opp.; 5 U.S.C. § 552(b)(7)(E). Rather, plaintiff asserts that "the issue of whether Exemption 7(E) appropriately applies is not one that is yet before the Court." Opp. at 4–5; *see also* Def.'s Reply in Support of Mot. [Dkt. # 23] ("Reply") at 3.

In order to assess the validity of the *Glomar* response, it is necessary to determine whether even revealing the existence of the requested materials would implicate a FOIA exemption, so the issue is squarely before the Court at this time. The declaration provided by the FBI "demonstrate[s] logically" why confirming the existence of responsive records poses a risk of circumvention of the law. *Blackwell*, 646 F.3d at 42. Understanding how the FBI does or does not obtain information from foreign partners, in a specific investigation or more generally, would enable criminals to predict FBI investigative tactics and develop countermeasures to avoid detection. The exemption was properly invoked.

### III. "Public Domain" Exception

Plaintiff argues that "the only question that is ripe for adjudication is whether FBI is categorically entitled to Glomar [sic] everything as a matter of fact or law," Opp. at 5, and whether the agency waived its right to invoke a *Glomar* response because it made prior official acknowledgments of the existence of responsive records. Opp. at 6–11.

"Under FOIA's 'public domain' exception, an agency may not rely on an 'otherwise valid [FOIA] exemption to justify withholding information that is already in the 'public domain.'" *Marino v. DEA*, 685 F.3d 1076, 1080 (D.C. Cir. 2012), citing *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 836 (D.C. Cir. 2001).[3] And "in the context of a *Glomar* response, the

---

3     This is commonly referred to as an "official acknowledgment" challenge or the "public domain exception." *See Am. Civ. Liberties Union v. CIA*, 710 F.3d 422, 426–27 (D.C. Cir. 2013) (using the terms interchangeably).

public domain exception is triggered when 'the prior disclosure establishes the existence (or not) of records responsive to the FOIA request,' regardless whether the contents of the records have been disclosed." *Marino*, 685 F.3d at 1081, citing *Wolf*, 473 F.3d at 379.  "A plaintiff mounting an official acknowledgment argument 'must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld.'"  *Am. Civ. Liberties Union*, 710 F.3d at  427 (D.C. Cir. 2013), quoting *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983).

The D.C. Circuit has established a "strict test" to be applied to claims of official disclosure. *Moore v. CIA*, 666 F.3d 1330, 1333 (D.C. Cir. 2011).  Information is officially acknowledged by an agency where:  (1) "the information requested [is] as specific as the information previously released," (2) the requested information "match[es] the information previously disclosed," and (3) the requested information was already "made public through an official and documented disclosure."  *Id.*, citing *Am. Civ. Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 620–21 (D.C. Cir. 2011).

The D.C. Circuit has also explained how that test is to be applied in the *Glomar* context. "If the prior disclosure establishes the *existence* (or not) of records responsive to the FOIA request, the prior disclosure necessarily matches both the information at issue – the existence of records – and the specific request for that information."  *Wolf*, 473 F.3d at 379 (emphasis in original).  The D.C. Circuit has repeatedly emphasized the importance of applying this test narrowly, because "the fact that information exists in some form in the public domain does not necessarily mean that official disclosure will not cause harm cognizable under a FOIA exemption."  *Wolf*, 473 F.3d at 378, citing *Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990).  Therefore, "[p]rior disclosure of similar information does not suffice; instead, the *specific* information sought by the

plaintiff must already be in the public domain by official disclosure." *Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007) (emphasis in original), quoting *Wolf*, 473 F.3d at 378.

If a court determines that a *Glomar* response has been waived because the information was previously officially acknowledged, then the government must either: "(1) disclose the record to the requester or (2) establish that its contents are exempt from disclosure and that such exemption has not been waived." *Moore*, 666 F.3d at 1333. This means that a failed *Glomar* response "does not mark the end" of a case. *Am. Civ. Liberties Union*, 710 F.3d at 432. Instead, the case is remanded to the agency to process the FOIA request and assert any exemptions to disclosure on a document-by-document basis. *Wolf*, 473 F.3d at 379–80.

Plaintiff argues that the FBI has "officially acknowledged" what may otherwise be considered exempt information under FOIA Exemption 7(E), and so now, the disclosure of the information may be compelled. Opp. at 6–11. Plaintiff argues that this disclosure occurred in two ways. First, plaintiff asserts that "[t]he Department of Justice routinely publicly acknowledges it engages in law enforcement operations and investigation with its foreign counterparts, especially with respect to matters of cybercrime in specific criminal cases." Opp. at 8–9. He cites to numerous Department of Justice press releases that acknowledge cooperation with specific law

enforcement agencies in countries including Germany, Brazil, Turkey, France, the United Kingdom, Canada, and others.  Opp. at 9–10. [4]

Second, plaintiff argues that "[t]he focus of the particular records sought in [p]laintiff's FOIA request, i.e., the existence of the FBI's relationship with a foreign law enforcement agency . . . was officially and *publicly* acknowledged in United States of America v. Zackary Ellis Sanders, Criminal Action No. 20-143 (E.D. VA)(TSE), ECF Dkt. No. 122."  Opp. at 10 (emphasis in original).  In that "redacted but publicly available" opinion, plaintiff takes the position that the FBI "clearly and explicitly" acknowledged the existence of the FBI's relationship with the foreign law enforcement agency, "including the fact [that] the relationship involved the receipt of information about a particular IP address allegedly accessing online material that is the subject of the criminal action."  Opp. at 10.

Defendant responds that the "FBI has never publicly and officially acknowledged coordination with or the receipt of information from the specific [foreign law enforcement agency] at issue in the context of the investigative matter described in [p]laintiff's request," and plaintiff has not "referenced specific information in the public domain that duplicates what he claims is being withheld."  Def.'s Mem at 8–9, citing Def.'s SOF ¶¶ 10, 16; *see* Bender Decl. ¶ 12; *see also* Reply at 2–5.

---

4      The FBI is part of the Department of Justice.  *About: What is the FBI?*, FBI, https://www.fbi.gov/about/faqs/what-is-the-fbi (last visited Mar. 17, 2022).  The D.C. Circuit has held that where "disclosures are made by an authorized representative of the agency's parent," they can qualify as an official statement as to waive the *Glomar* response.  *Am Civ. Liberties Union*, 710 F.3d at 429 n.7.  For example, "a federal prosecutor's decision to release information at trial is enough to trigger the public domain exception where the FOIA request is directed to another component within the Department of Justice," *Marino*, 685 F.3d at 1082, and "the FBI – likewise part of [the Department of Justice] – could not withhold the specific portions of recordings that the plaintiff showed were played in federal court."  *Id.* (explaining holding in *Davis v. U.S. Dep't of Just.*, 968 F.2d 1276, 1279–82 (D.C. Cir. 1992)).

The Court finds that plaintiff has not supplied any statements that constitute official acknowledgments of the existence of the records requested. For one, while the Department of Justice has plainly acknowledged the existence of some law enforcement operations and investigations with its foreign counterparts, the press releases that plaintiff cites do not reference "the *specific* information sought by the plaintiff." *Morley*, 508 F.3d at 1124 (emphasis in original), quoting *Wolf*, 473 F.3d at 378. This is because none of the sources make any reference to records pertaining to a relationship with the specific foreign law enforcement agency plaintiff has named "to investigate cybercrime"; nor do they confirm the existence of records related to the specific investigation plaintiff included in the FOIA request. FOIA Request at 1–2; *see* Opp. at 9–10. Plaintiff acknowledges this when he characterizes the press releases as "generic sample[s] of Department of Justice law enforcement press releases that discuss relationships with specific foreign countries and their law enforcement entities" and asserts that he is "in no way publicly suggesting that any of these countries is involved with his criminal proceeding." Opp. at 9 n.8. Further, the Court finds that the FBI did not "publicly and officially acknowledge" coordination with or the receipt of information from the specific foreign law enforcement agency at issue in the context of the investigative matter described in plaintiff's request. Plaintiff cites to a redacted memorandum opinion from the Eastern District of Virginia, and argues that "the existence of the FBI's relationship with a [foreign law enforcement agency] is clearly and explicitly acknowledged by way of citations to a sworn affidavit from the FBI." Opp. at 10. But in that memorandum, all references to the name of the foreign law enforcement agency are redacted, *see* E.D. Va. Mem. Op., Ex. 1 to Opp. [Dkt. # 21-1], and the underlying sworn affidavit that the court cites is not publicly accessible. *See United States v. Sanders*, 20-cr-143 (E.D. Va. Oct. 26, 2020).

14

Accordingly, the Court cannot conclude that the FBI made an official *public* disclosure of information through the FBI affidavit or the Eastern District of Virginia opinion.  *Cf. Wolf*, 473 F.3d at 379 (finding that congressional testimony by the CIA director about the specific information at issue was "official acknowledgment"); *Pickard v. U.S. Dep't of Just.*, 653 F.3d 782, 787 (9th Cir. 2011) (finding "official confirmation" in case in which the government "refuse[d] to confirm or deny the existence of records pertaining to [a] confidential informant" because Department of Justice agents and confidential informants previously testified "at trial in open court about the identity and activities of those confidential informants").

## CONCLUSION

For all of these reasons, the Court will **GRANT** defendant's motion for summary judgment [Dkt. # 18].  Because any documents responsive to plaintiff's requests were compiled for law enforcement purposes and acknowledging their existence would cause the harm Exemption 7(E) is designed to prevent, the FBI's *Glomar* response was appropriate, and plaintiff has not met his burden to show that there has been any public, official acknowledgment of the existence of the records requested.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  March 25, 2022